# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-2000

RANDY MUCHA,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF OAK BROOK, a municipality, and
THOMAS SHEAHAN, in his official and
individual capacity,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-05350—**William T. Hart,** *Judge.*

ARGUED NOVEMBER 29, 2010—DECIDED FEBRUARY 14, 2011

Before BAUER, WOOD and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Sergeant Randy Mucha was arrested in 2006 for unlawfully requesting a criminal background check. After the prosecutors dropped all charges against him, Mucha filed a series of complaints in both federal and state court. The only federal claim to survive the defendants' motions to dismiss was Mucha's

false arrest claim. Upon the parties' cross motions for summary judgment, the district court entered judgment in favor of the defendants. This appeal followed. We affirm.

## I. BACKGROUND

In 2004, Acting Police Chief Steve Larson assigned Sergeant Randy Mucha the task of conducting an internal investigation into officer misconduct. His investigation revealed that squad cars frequently parked outside the Gaiks' home for long periods of time, causing Mucha to wonder whether some police officers were sitting idle on the job. Mucha's suspicions were not without merit, and at least one officer was disciplined for improperly parking outside the Gaiks' residence. This was Mucha's first encounter with the Gaiks.

In January 2005, Officer Ben Kadolph reported receiving a phone call from Frances Gaik on his home telephone number even though he had never given Gaik his contact information. Mucha became concerned that police officers had provided the Gaiks with an internal police list containing the names, addresses, and phone numbers of all Oak Brook police. Adding to his general distrust of the Gaiks, Mucha discovered that Frances Gaik was one of the primary organizers of an advocacy group named Citizens For a Better Government, or CBG, which publically criticized the Oak Brook Police Department.

Toward the end of January, Mucha informed his superiors that he was not investigating the Gaiks and that he

had never contacted them. Contrary to these representations, however, Mucha had created "lindalucinda," a false electronic identity, and sent Frances Gaik a series of e-mails in order to infiltrate CBG meetings. These e-mails quickly won Frances Gaik's trust, and within days Mucha had arranged for two agents to attend and report back on a CBG meeting. Mucha then drafted a rebuttal to CBG's criticisms and posted his rebuttal on the police union website. Three days later, Mucha learned that Frances Gaik had complained of this posting to his superiors.

On February 1, 2005, Mucha used the Law Enforcement Agencies Data System ("LEADS") to run a criminal background check on Frances Gaik. Only police officers have access to LEADS, and their use of this system is heavily regulated and restricted. One such restriction is the prohibition against using LEADS for personal purposes.

While unaware that Mucha had run a criminal history check, the Gaiks filed a civil rights lawsuit against the Village of Oak Brook, Mucha, and the Village of Oak Brook prosecutor. They alleged that Mucha attempted to stifle Frances Gaik's freedom of expression on matters of public concern by spying on the Gaiks' home and sending surreptitious e-mails to Frances Gaik. Although Mucha has since admitted to these allegations, when the Gaiks deposed Mucha, he testified under oath that he did not have any law enforcement bases for interacting with Frances Gaik, that he did not in fact investigate the Gaiks, and that he did not create the fictional electronic account "lindalucinda."

Meanwhile, in March 2005, Acting Police Chief Larson was replaced by Police Chief Thomas Sheahan. Since all of the above events happened prior to Sheahan's appointment, Sheahan could not have known of these events unless he was informed of them by Mucha or some other individual.

More than a year later, in July 2006, the Gaiks subpoenaed the Illinois State Police and discovered that Mucha had requested a criminal history report on Frances Gaik. Approximately two weeks later, police officers called Mucha and asked him whether he ran a background check on Frances Gaik in February 2005. Mucha replied, "I don't recall," which he later admitted was a lie. Given Mucha's response to this question, together with all other facts known to Sheahan on August 16, 2006, Sheahan obtained a warrant and arrested Mucha for unlawfully requesting a criminal history check in violation of § 18(H) of the Uniform Conviction Information Act, 20 ILCS 2635/1.

Prosecutors eventually dismissed all charges against Mucha.[1] Soon thereafter, Mucha filed multiple claims in both state and federal court; the only federal claim surviving the defendants' motions to dismiss was his § 1983 false arrest claim. Upon the parties' cross motions for summary judgment, the district court granted judgment in favor of the defendants on the false arrest claim and dismissed Mucha's state law claims without prejudice. Mucha timely appealed.

---

[1] Only in rare circumstances not present here is prosecutorial discretion subject to judicial scrutiny.

## II. DISCUSSION

We review the district court's grant of summary judgment in favor of the defendants de novo, construing all facts and reasonable inferences in Mucha's favor. Summary judgment in favor of the defendants is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Mucha makes two arguments on appeal, arguing first that he was falsely arrested and second that the defendants do not have qualified immunity. We disagree.

### A.  Probable Cause to Arrest Mucha

Mucha contends that he was falsely arrested and seeks relief under 42 U.S.C. § 1983 (2010). To succeed on this claim, Mucha must prove that Sheahan lacked probable cause to arrest him. *See Williams v. Rodriguez*, 509 F.3d 392, 398-99 (7th Cir. 2007).

As an initial matter, we affirm the district court's finding that Sheahan did not learn of the background check on Frances Gaik until July 2006. While Mucha testified that he could not recall when or whether he told Sheahan about the background check, Sheahan testified under oath that he did not learn of the background check until July 31, 2006. Because Mucha's testimony is inconclusive, it cannot by itself create a genuine factual dispute. *See Steinhauer v. DeGolier*, 359 F.3d 481, 485 n.1 (7th Cir. 2004) (demonstrating that

inconclusive testimony cannot by itself create a genuine factual dispute); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2007) (stating that "a factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party'") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). We therefore affirm the district court's finding that, viewing all facts in the record most favorable to Mucha, it is proper to assume that Sheahan did not learn of the background check until July 31, 2006.

We now turn to whether Sheahan possessed probable cause in August 2006 to arrest Mucha for unlawfully requesting a criminal background check. Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Probable cause requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true. *See Purvis v. Oest*, 614 F.3d 713, 722-23 (7th Cir. 2010); *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007). In evaluating probable cause, we look only to the information known to the officer at the time of arrest, and we view the circumstances of the arrest from the perspective of a reasonable person in the position of the officer. *Gonzalez*, 578 F.3d

at 537. Thus, the jury should determine the existence of probable cause only if "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Id.* (citing *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013-14 (7th Cir. 2006)).

Sheahan learned the following information in March 2005: (1) Mucha was conducting an internal investigation into police misconduct; (2) Mucha discovered that squad cars were frequently parked outside the Gaiks' home; (3) an officer was disciplined for improperly parking outside the Gaiks' home; and (4) Mucha was concerned that police officers may have provided the Gaiks with an internal police list that contained the names, addresses, and phone numbers of Oak Brook police officers. However, by August 16, 2006 (the date of Mucha's arrest), Sheahan had discovered the following additional information through the Gaiks' civil lawsuit, newspaper articles, and other means: (1) Mucha did not approve of CBG, the group organized primarily by Frances Gaik; (2) Mucha spied on the Gaiks, infiltrated CBG meetings, and created a false e-mail account through which he contacted Frances Gaik; (3) Mucha ran Google searches on Frances Gaik for purposes unrelated to any police investigation; (4) although Mucha had previously testified under oath that he did not run a criminal background check on Frances Gaik, the Illinois State Police records indicated that Mucha did in fact run the background check; (5) at no time was Frances Gaik a witness in any police investigation or the focus of any police investigation; and (6) when asked for a second time whether

he had run a criminal history check on Frances Gaik, Mucha responded "I don't recall," a response that Mucha now admits was a lie. Even if we assume that Mucha secretly held a legitimate reason to run the criminal background check—as he now asserts he did—Sheahan was not armed with knowledge of Mucha's innocent motive at the time of Mucha's arrest. Given everything that Sheahan knew in August 2006, we find that he had probable cause to arrest Mucha because a reasonable person could believe, under these circumstances, that there was a substantial probability that Mucha had unlawfully requested a criminal background check. This is true even if Sheahan was maliciously motivated; an officer's motivations are not relevant to the probable cause determination. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). We affirm the district court's judgment.

### B. Qualified Immunity

Mucha also argues that the defendants cannot succeed on the affirmative defense of qualified immunity because, when procuring Mucha's arrest warrant, Sheahan knowingly, intentionally, or with a reckless disregard for the truth made false statements that were necessary to the judge's probable cause determination. We need not reach this issue, however, because the existence of probable cause protects the defendants from liability, and the defendants therefore do not require the additional protection of qualified immunity. *See Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010) (stating that probable cause is "an absolute defense to any claim under Section 1983 against police officers for wrongful arrest")

(quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)).

### C.  State Law Claims

We affirm the district court's dismissal of Mucha's state law claims because Mucha has no viable federal claim and neither party contends that we should retain jurisdiction over state law issues.

### III.  CONCLUSION

We AFFIRM summary judgment in favor of the defendants.