In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2059

JOHN H. BURTON,

*Plaintiff-Appellant,*

*v.*

KOHN LAW FIRM, S.C., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-00594-NJ — **Nancy Joseph**, *Magistrate Judge.*

ARGUED NOVEMBER 29, 2018 — DECIDED AUGUST 9, 2019

Before FLAUM, RIPPLE, and MANION, *Circuit Judges.*

RIPPLE, *Circuit Judge.* The history of this litigation began in the circuit court for Brown County, Wisconsin. Kohn Law Firm, S.C. ("Kohn"), acting on behalf of Unifund CCR, LLC ("Unifund"), a debt collection agency, brought an action against John H. Burton. Unifund sought to collect from Mr. Burton a debt incurred on a Citibank, N.A. ("Citibank"), credit card account. Mr. Burton denied knowledge of, or any association with, that account.

While that action was pending in state court, Mr. Burton filed the present lawsuit against Kohn in the United States District Court for the Eastern District of Wisconsin. He alleged that, with respect to the same debt, Kohn had violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and the Wisconsin Consumer Act ("WCA"), Wis. Stat. §§ 421–427, by filing the Wisconsin action against Mr. Burton without first providing him notice of his right to cure the default.

The Wisconsin state court later dismissed Kohn's action against Mr. Burton on the basis of Mr. Burton's denial that he was the individual who had incurred the underlying debt. Mr. Burton then amended his complaint in this federal action to add Unifund as a defendant. Following cross-motions for summary judgment by the parties, the magistrate judge, sitting as the district court, entered judgment in favor of Kohn and Unifund.[1] The district court held that Mr. Burton could not proceed on his FDCPA or WCA claims because he had failed to present sufficient evidence that the debt incurred on the Citibank account was for personal, family, or household purposes and therefore a "consumer debt." Mr. Burton now challenges that determination.

We agree with the district court. On the record before us, Mr. Burton has not come forth with sufficient evidence that the debt in question is a consumer debt. Accordingly, we affirm the judgment of the district court.[2]

---

[1] The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367.

[2] We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## I

## BACKGROUND

On February 17, 2015, Kohn, on behalf of Unifund, brought a lawsuit against Mr. Burton in the Circuit Court of Brown County, Wisconsin. Kohn claimed that Mr. Burton had failed to make payments on a credit agreement with Citibank. In his answer, Mr. Burton stated, "I have never had any association with Unifund CCR, LLC in the past and do not know who you are or what you are talking about, so I strongly dispute this debt, with emphasis."[3] He also asserted counterclaims against Unifund, alleging that he had been "'ambushed' by [Unifund's] Summons and Complaint" and that he "did not have any association with Unifund CCR, LLC in the past, prior to this legal action."[4] Mr. Burton further contended that his "personal information has also been compromised by the State of WI and 3rd party fraud may have occurred" on the account in question.[5] He asserted as affirmative defenses that Unifund had failed to provide him notice of his right to cure the default prior to filing suit, in violation of Wisconsin Statutes §§ 425.104 and 425.105, and that there was a "Lack of Privity" because he "ha[d] never entered into any contractual or debtor/creditor arrangements" with Unifund.[6] Furthermore, at an evidentiary hearing on July 6, 2015, Mr. Burton testified that he never had

---

[3] R.43-1 at 1.

[4] *Id.* at 2.

[5] *Id.*

[6] *Id.* at 4–5.

received statements, made payments, or made purchases on the Citibank account.

On May 19, 2016, while the Wisconsin action was still pending, Mr. Burton began this litigation in the district court. He alleged that, "[t]o the extent that Burton entered into a credit agreement with Citibank, NA, such agreement was entered into for personal, family or household purposes."[7] He claimed that, by failing to provide written notice of his right to cure the default on the Citibank agreement before bringing the state court action, Kohn had violated the FDCPA, 15 U.S.C. §§ 1692d and 1692e, and the WCA, Wis. Stat. § 427.104(1)(h) and (1)(j).

On September 8, 2016, the state court conducted a hearing on a motion by Unifund to dismiss Mr. Burton's counterclaims. In response to a question from the court, Mr. Burton's counsel confirmed that his "client ha[d] testified under oath that he's not the John H. Burton that they are claiming had this account."[8] Based on this information, the state court immediately dismissed Unifund's claims and Mr. Burton's counterclaims without prejudice. Mr. Burton then amended his federal complaint, adding Unifund as a defendant in this action. Kohn, Unifund, and Mr. Burton then filed cross-motions for summary judgment.

On April 13, 2018, the district court decided the parties' cross-motions. First, the court denied Mr. Burton's motion for summary judgment. Noting that "the FDCPA does not protect all obligations, but only those involving 'consumer'

---

[7] R.24 ¶ 20.

[8] R.53 at 23.

debt," the court held that Mr. Burton had not established that the underlying debt was a consumer debt.[9] The court observed that, under the FDCPA, a consumer debt arises out of a transaction that is "primarily for personal, family, or household purposes."[10] Similarly, the WCA only protects "customers," defined as persons "who seek[] or acquire[] real or personal property, services, money or credit for personal, family, or household purposes."[11]

While continuing to maintain that he did not know anything about the debt in question, Mr. Burton attempted to demonstrate that the Citibank debt was incurred for "personal, family, or household purposes." In this respect, he submitted evidence that: (1) Kohn and Unifund described themselves as debt collectors; (2) the billing statements showed that the charges on the credit card were for personal, family, and household use; (3) the billing statements were addressed to Mr. Burton personally at his residence; and (4) in an email, a Citibank employee described the underlying account as a "consumer account."[12] The district court nevertheless determined that this evidence was insufficient to establish that the underlying debt was a consumer debt. The court observed that the defendants' status as debt collectors did not establish that the particular debt in question here necessarily was consumer debt. Nor did the fact that the de-

---

[9] R.75 at 4 (citing *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997)).

[10] *Id.* (quoting 15 U.S.C. § 1692a(5)).

[11] *Id.* at 6 (quoting Wis. Stat. § 421.301(17)).

[12] R.42-3.

fendants sued Mr. Burton personally or that they repeatedly included FDCPA disclaimers in their communications to him establish that the debt was a consumer debt. The billing statements sent to Mr. Burton's residence also did not establish that the debts were consumer debts because individuals often conduct business transactions at their home. Finally, the court noted that Mr. Burton admitted that he had testified that he had not applied for and had no knowledge of the transactions on the Citibank account. Viewing the evidence in the light most favorable to the nonmoving party, the court held that Mr. Burton was not entitled to judgment as a matter of law.

The district court then granted Kohn and Unifund's motions for summary judgment. At the outset of its analysis, the court made clear that Mr. Burton had the burden of establishing that the underlying transactions were consumer transactions. The court noted again that Mr. Burton had disavowed, in sworn testimony, any knowledge of the underlying credit card transactions. Turning to the email from the Citibank employee describing the account as a "consumer account,"[13] the court ruled that the email statement was inadmissible hearsay and that none of the exceptions to the rule against hearsay applied. The court also determined that the billing statements did "not facially show that the charges were made for personal use."[14] Finally, the court considered Mr. Burton's repeated assertions that he had no knowledge of, or association with, the Citibank account. Acknowledging

---

[13] *Id.*

[14] R.75 at 11.

that evidence of identity theft can be relevant to establishing the existence of consumer debt, the court nevertheless concluded that Mr. Burton had presented no such evidence in this case. Therefore, the court held that Mr. Burton had "not put forth any admissible evidence that show[ed] a genuine factual dispute regarding whether the debt incurred was for personal, family, or household use."[15] The court accordingly entered judgment for the defendants. Mr. Burton filed a timely notice of appeal.

## II

## DISCUSSION

In this appeal, Mr. Burton focuses only on the district court's grant of summary judgment for the defendants. We review de novo a district court's decision to grant summary judgment. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of [his] case." *Lewis*, 561 F.3d at 702. "If there is no triable issue of fact on even one essential element of the nonmoving party's case, summary judgment is appropriate." *Id.*

Here, we examine the record in the light most favorable to Mr. Burton and grant him the benefit of all reasonable inferences that may be drawn from the evidence. We will re-

---

[15] *Id.* at 13.

verse the judgment only if we find a genuine issue concerning any fact that might affect the outcome of the case. We must remember, however, that "[o]nce a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact." *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999). "Rather, a genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*

We have clarified that "[t]he burden on the non-movant is not onerous." *Id.* "The nonmovant need not depose h[is] own witnesses or produce evidence in a form that would be admissible at trial, but []he must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in h[is] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013) (citation omitted) (internal quotation marks omitted). "Moreover, the non-movant need not match the movant witness for witness, nor persuade the court that his case is convincing; he need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Liu*, 191 F.3d at 796–97. "[A] party will be successful in opposing summary judgment only

when they present definite, competent evidence to rebut the motion." *EEOC. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

Both the FDCPA and the WCA were enacted to protect personal borrowers from abusive debt collection practices.[16] It follows that, to state a claim under either statute, a plaintiff, who has the burden of proof on each element of the cause of action, must demonstrate that the debt in question arises out of a transaction incurred for personal, family, or household purposes. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily *for personal, family, or household purposes*." 15 U.S.C. § 1692a(5) (emphasis added). Similarly, the WCA protects transactions involving a "customer," Wis. Stat. § 421.301(13), and defines a "customer" as "a person … who seeks or acquires real or personal property, services, money or credit *for personal, family or household purposes*," *id.* § 421.301(17) (emphasis added). Expenses incurred for a business purpose, by contrast, are outside the scope of both

---

[16] *See Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 639 (7th Cir. 2014) (en banc) ("The FDCPA is designed to protect consumer debtors against unscrupulous methods of consumer debt collection."); *Kett v. Cmty. Credit Plan, Inc.*, 596 N.W.2d 786, 794 (Wis. 1999) (observing that the WCA "is intended to protect customers from 'unfair, deceptive, false, misleading and unconscionable practices by merchants,' Wis. Stat. § 421.102(2)(b), and 'to permit and encourage the development of fair and economically sound consumer practices in consumer transactions,' Wis. Stat. § 421.102(2)(c)").

statutes. *See, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (interpreting the FDCPA); *Seeger v. AFNI, Inc.*, No. 05-C-714, 2007 WL 1598618, at *7 (E.D. Wis. June 1, 2007) (unpublished) (interpreting the WCA).

We also recognized recently that where, as here, a plaintiff maintains that the underlying debt was not his, he can nonetheless claim FDCPA protection by showing that the debt collector treated him as a "consumer" allegedly owing a consumer debt. *Loja v. Main St. Acquisition Corp.*, 906 F.3d 680, 684 (7th Cir. 2018) (holding "that the definition of 'consumer' under the FDCPA includes consumers who have been alleged by debt collectors to owe debts that the consumers themselves contend they do not owe"). However, a plaintiff proceeding under this theory still must offer evidence to establish that the *debt* was a consumer debt: in other words, that the debt was incurred for personal, family, or household purposes.

This appeal therefore turns on the question whether Mr. Burton submitted sufficient evidence to create a triable issue of fact that the debt incurred on the Citibank account was for personal, family, or household purposes.[17] Determining the purposes for which a debt was incurred is necessarily a fact-based, case-specific inquiry. Mr. Burton submits there are five pieces of evidence establishing that the debt incurred on the Citibank account was consumer debt: (1) his

---

[17] Because "[c]ourts construe the WCA in accordance with the policies of the FDCPA," we consider Mr. Burton's FDCPA and WCA claims together. *Myers v. Americollect Inc.*, 194 F. Supp. 3d 839, 846 (E.D. Wis. 2016).

statements that, to the extent he was liable for the debt, it was a consumer debt; (2) the defendants' treatment of the debt as a consumer debt by including FDCPA disclaimers on the collection letters, suing Mr. Burton in his personal capacity, and sending communications to his personal address; (3) Kohn and Unifund's description of their consumer debt collection services on their websites; (4) a Citibank employee's email description of the underlying account as a "consumer account";[18] and (5) the billing statements listing purchases made on the credit card for personal, family, or household purposes. We consider each submission in turn.

Mr. Burton contends that his own statements suffice to show that this was a consumer debt.[19] We cannot accept this submission. Throughout the state court action, he represented that he had never applied for, had no knowledge of, and made no purchases on or payments toward the Citibank account.[20] In his federal complaint, by contrast, he alleged that,

---

[18] R.42-3.

[19] Mr. Burton further contends that the district court should have considered evidence that his "identity was potentially stolen" in support of his position that the debt was a consumer debt. Appellant's Br. 36. Because Mr. Burton never raised an identity-theft argument before the district court, *cf.* R.24; R.40; R.70, it is not properly before us in this appeal.

[20] *See* R.43-1 at 1 (answering the complaint and stating, "I have never had any association with Unifund CCR, LLC in the past and do not know who you are or what you are talking about, so I strongly dispute this debt, with emphasis"); *id.* at 2 (asserting a counterclaim that he was "'ambushed' by [Unifund's] Summons and Complaint," and that he "did not have any association with Unifund CCR, LLC in the past, prior to this legal action"); *id.* at 5 (asserting as an affirmative defense "Lack of Privity," alleging that he had "never entered into any contractual or

(continued … )

"[t]o the extent that Burton entered into a credit agreement with Citibank, NA, such agreement was entered into for personal, family or household purposes."[21] This latter allegation cannot be reconciled with his total disavowals in the state court action. Nor has Mr. Burton submitted an affidavit or any other sworn testimony in this litigation to support his position in opposition to summary judgment. Without more, the bald assertion in his complaint is hardly affirmative evidence that the debt was a consumer debt. *See, e.g., Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1307 (S.D. Fla. 2016) (granting summary judgment for defendants where plaintiff stated the eBay account was not hers, but offered no evidence showing the account or debt was "consumer in nature").[22]

---

( … continued)

debtor/creditor arrangements with" Unifund); R.46-3 at 6 (Mr. Burton "denie[d] applying for the alleged account with alleged original creditor, using or making payments on the alleged credit card."); R.46-4 at 2 (notes of small claims court commissioner indicating that Mr. Burton had testified under oath that he did not receive statements, make payments, or make purchases on the Citibank account); R.49-5 at 2 (counsel confirming Mr. Burton had "testified under oath that he's not the John H. Burton that they are claiming had this account").

[21] R.24 ¶ 20.

[22] *See also Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 335 (4th Cir. 2012) (unpublished) (per curiam) (holding that plaintiff's declaration stating that he never used credit cards for any business purpose, which conflicted with answers he provided in state court deposition and trial testimony that he did not recall obtaining the credit cards and did not remember making any purchases with the cards, was insufficient to create a genuine issue of material fact); *El-Bakara v. Weltman, Weinberg & Reis Co., LPA*, No. 2:17-cv-05138-MMB, 2019 WL 1258830, at *3 (E.D. Pa.

(continued … )

Mr. Burton next submits that Kohn and Unifund's treatment of the debt as a consumer debt is evidence that the debt was, in fact, a consumer debt. In support, he notes that the defendants included FDCPA disclaimers in their collection letters, sued Mr. Burton personally in the state court action, and sent communications to his home address. However, courts have held repeatedly that merely including FDCPA disclaimers on debt collection letters is insufficient evidence that the debt was a consumer debt because debt collectors may be exercising caution and including disclaimers on all communications with debtors simply to avoid any FDCPA liability. *See, e.g.*, *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010) (noting that evidence that letter included disclaimer identifying it as attempt to collect a debt "does not automatically trigger the protections of the

---

( … continued)

Mar. 19, 2019) (unpublished) (finding plaintiff failed to plead sufficient facts to demonstrate the underlying debt was a consumer debt where he did not "disclose any specific details about the underlying debt," other than that he believed it was owed by his son and that any alleged debts "arose out of a transaction which was primarily for personal, family, or household purposes" (internal quotation marks omitted)); *Horton v. Trans Union, LLC*, No. 12-2072, 2015 WL 1055776, at *6 (E.D. Pa. Mar. 10, 2015) (unpublished) (holding plaintiff's statements that she had no knowledge of purchases, transactions, or payments made on credit card accounts and that she was the victim of identity theft failed to demonstrate the accounts involved consumer debts); *Garcia v. LVNV Funding LLC*, No. A-08-CA-514-LY, 2009 WL 3079962, at *4–5 (W.D. Tex. Sept. 18, 2009) (unpublished) (holding plaintiff failed to meet his burden to prove that collection activity arose out of consumer debt where plaintiff denied debt was his and failed to produce any evidence regarding purpose for which debt was incurred).

FDCPA").[23] Nor is it helpful that the defendants brought the state court action against Mr. Burton in his personal capacity; an individual can be sued in a personal capacity for a business debt.[24] Further, it bears little on our inquiry that the defendants sent communications to Mr. Kohn at his personal address; an individual can carry on business activities from his residence.[25]

---

[23] *See also Evenson v. Palisades Collection, LLC*, No. 2:13-cv-1226, 2015 WL 3466936, at *5 (S.D. Ohio June 1, 2015) (unpublished) (observing that, even if defendants included validation information in collection communications, "the debt collector's treatment of an obligation as one under the FDCPA [was] irrelevant to … the nature of the obligation itself"); *Horton*, 2015 WL 1055776, at *7 (same).

[24] *See, e.g., Matin v. Fulton, Friedman & Gullace LLP*, 826 F. Supp. 2d 808, 812 (E.D. Pa. 2011) (finding that defendants' attempt to collect from plaintiff personally was irrelevant to the nature of the debt); *see also Boosahda*, 462 F. App'x at 335 (holding that "the fact that the state court action was initiated against [plaintiff] in his personal capacity" was "not dispositive"); *In re Pasley*, 596 B.R. 577, 585 (Bankr. W.D. Ky. 2019) (holding that the fact that defendants sued plaintiff personally, rather than his corporate identities, did not turn commercial debts into consumer debts).

[25] *See, e.g., Matin*, 826 F. Supp. 2d at 812 (concluding that credit card account statement addressed to plaintiff at home address was insufficient evidence of consumer debt); *Holman v. W. Valley Collection Servs., Inc.*, 60 F. Supp. 2d 935, 936–37 (D. Minn. 1999) (finding that evidence that defendants sent collection letters to plaintiff's home did not convert commercial debt into consumer debt); *see also Evenson*, 2015 WL 3466936, at *4 (finding evidence that defendants listed an individual, rather than a business, as the account holder and listed a residential address for the account were insufficient to show the debt was a consumer debt); *Anderson v. AFNI, Inc.*, No. 10-4064, 2011 WL 1808779, at *14 (E.D. Pa. May 11, 2011) (unpublished) (concluding that evidence that debt was associated

(continued … )

Mr. Burton also invites our attention to evidence that Kohn and Unifund advertised their services collecting consumer debt on their websites. However, the defendants' marketing materials generally describing their debt collection services do not establish that the debt they attempted to collect *in this case* was a consumer debt.

Next, Mr. Burton seeks to rely on the email of a Citibank employee, Cathrine Reinecke, stating that the account in default "was a consumer account."[26] Reinecke sent this message in response to an email from Mr. Burton's counsel inquiring, "Is there any way of knowing whether this was a business or consumer account? Does Citi mark the file in one way or another?"[27] Characterizing the email as "a statement made by someone other than the declarant to prove the truth of the matter asserted (that the debt was consumer debt)," the district court excluded this email as inadmissible hearsay.[28] Mr. Burton submits the Reinecke email is not hearsay but instead a statement of an opposing party under Federal Rule of Evidence 801(d)(2)(C). In the alternative, he contends, even if the email is hearsay, it is admissible under the residual exception to the hearsay rule, Rule 807. We review the district court's evidentiary ruling for an abuse of discre-

---

( … continued)

with an individual and a residential address was insufficient to establish debt was a consumer debt).

[26] R.42-3.

[27] *Id.*

[28] R.75 at 10.

tion. *United States v. Thornton*, 197 F.3d 241, 250 (7th Cir. 1999).

A statement made out of court and offered to prove the truth of the matter asserted is hearsay and is not admissible into evidence. Fed. R. Evid. 801(c), 802. Here, Mr. Burton sought to introduce Reinecke's email to establish that "Citi itself stated that the account was a consumer account."[29] Thus, the district court correctly characterized the statement as hearsay.

The Rules of Evidence exclude from the definition of hearsay a statement "offered against an opposing party" that "was made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2). The Reinecke email does not satisfy this exception. Reinecke is an employee of Citibank, which is not a party to this lawsuit. Her statement therefore cannot be attributed to Kohn or to Unifund, the opposing parties here.[30] Moreover, Mr. Burton offers no evidence that Kohn or Unifund authorized Reinecke to speak on behalf of either company on any subject, let alone about the account in default here. Consequently, her email is not a statement by an opposing party as contemplated by Rule 801(d)(2)(C). *See, e.g., Carlisle v. Deere & Co.*, 576 F.3d 649, 656 (7th Cir. 2009) (concluding Rule

---

[29] R.40 at 6.

[30] *See, e.g., Linder & Assocs., Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 551–52 (3d Cir. 1999) (holding that a statement in a policy guide produced by another insurance company in another lawsuit was not an admission by Aetna).

801(d)(2)(C) did not apply to statements made by a company with no authority to speak on Deere's behalf).

Nor does the Reinecke email fall within the residual exception to the hearsay rule. Rule 807 provides that a statement not otherwise subject to a hearsay exception "is not excluded by the rule against hearsay" if:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;

> (2) it is offered as evidence of a material fact;

> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). In applying this rule, we have heeded congressional guidance to construe "these conditions narrowly" so that the residual exception does not swallow the rule against hearsay. *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996) (interpreting predecessor to Rule 807).

The Reinecke email does not satisfy any of the conditions of Rule 807. First, none of the usual "circumstantial guarantees of trustworthiness" are present here. Fed. R. Evid. 807(a)(1). The statement in this email was not made under oath or subject to cross-examination. Nor has Mr. Burton offered any evidence as to Reinecke's character for truthfulness or as to whether her statement was based on personal knowledge. Second, Mr. Burton did not offer the email as "evidence of a material fact." Fed. R. Evid. 807(a)(2). Rather,

Mr. Burton sought to introduce the email to show that "Citi itself stated that the account was a consumer account."[31] As the district court correctly noted, whether the *account* was a consumer account did "not provide a factual dispute of whether" the *debt* was a consumer debt.[32] Third, through "reasonable efforts," Mr. Burton could have obtained the sworn deposition or in-court testimony of Reinecke or another Citibank representative. Fed. R. Evid. 807(a)(3). Such evidence would have been equally as probative, if not more probative, than the email because such testimony would have been subject to cross-examination about the nature of the debt.[33] Fourth, Mr. Burton has not demonstrated that admitting the Reinecke email will "serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807(a)(4). Therefore, the district court did not abuse its discretion in excluding the Reinecke email as inadmissible hearsay. We do not consider her out-of-court statement in support of Mr. Burton's contention that this was a consumer debt.

---

[31] R.40 at 6.

[32] R.75 at 11. *See, e.g.*, *Toroussian v. Asset Acceptance, LLC*, No. CV 12-03519 DDP (AGRx), 2013 WL 5524831, at *6 (C.D. Cal. Oct. 4, 2013) (unpublished) (concluding that evidence that credit card was opened at a retail bridal shop was insufficient to create triable issue of fact that debt incurred on credit card was consumer debt).

[33] Before the district court, counsel for Mr. Burton asserted that the defendants "at every occasion attempted to interfere with [plaintiff's] taking a deposition of Citi." R.55-1 at 3. However, Kohn submitted that counsel for Mr. Burton "failed to timely depose a Citibank representative due solely to his failure to schedule" the deposition. R.58 at 2.

Finally, Mr. Burton contends that the billing statements on the Citibank account demonstrate that the debt in question was consumer debt. Evidence of the types of purchases made on the credit card may be relevant to the question whether those purchases were made primarily for personal, family, or household purposes.[34] Here, Mr. Burton introduced billing statements showing that most of the charges on the Citibank account were purchases of low dollar amounts, under fifty dollars per transaction. The credit card was used primarily at gas stations and convenience stores in and around Green Bay, Wisconsin. There were also a few charges placed at office supply and auto parts stores, a local pizza establishment, and the local school district. None of these transactions, based on either the amount charged or the vendor, obviously signal that these were purchases made for a business purpose.

At the same time, however, the billing statements shed no light on why these charges were incurred. Given that Mr. Burton is unable to explain whether these transactions were for a consumer as opposed to a business purpose, the billing statements do not provide enough information for a trier of fact to conclude these purchases were made for personal, family, or household purposes. *Cf. Matin v. Fulton, Friedman & Gullace LLP*, 826 F. Supp. 2d 808, 812 (E.D. Pa. 2011) (finding the court "lack[ed] sufficient information to determine whether the purchases were made for primarily

---

[34] *See, e.g., Garcia*, 2009 WL 3079962, at *4 (acknowledging that "what the credit card was used for … could *perhaps* create a fact issue on whether that use was primarily for personal, family, or household purposes" (emphasis in original)).

personal, family, or household purposes" based on account statement where plaintiff was "unable to recall what purchases she made on her credit card and the purpose for those purchases").[35]

On this record, therefore, we hold that the district court properly determined that Mr. Burton has failed to put forward sufficient evidence to create a triable issue of material fact that the debt incurred on the Citibank account was consumer debt. The district court properly granted summary judgment in favor of the defendants on Mr. Burton's FDCPA and WCA claims.

## Conclusion

Because Mr. Burton failed to present sufficient evidence that the debt on the Citibank account was incurred for personal, family, or household purposes, we affirm the judgment of the district court.

AFFIRMED

---

[35] *See also Boosahda*, 462 F. App'x at 335 (deferring to the district court's finding, based on the billing statements, "that any or all of the purchases could have been business expenses").