In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-1981

KEVIN WOODS,

*Plaintiff-Appellant,*

*v.*

LVNV FUNDING, LLC and RESURGENT CAPITAL SERVICES, L.P.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cv-03451 — **Tanya Walton Pratt**, *Judge.*

_____

ARGUED JANUARY 6, 2022 — DECIDED FEBRUARY 28, 2022

_____

Before SYKES, *Chief Judge*, and ROVNER and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Kevin Woods claims an identity thief opened a credit card in his name, leading debt collectors to come after him for the card's unpaid balance. After months of phone calls and letter writing, Woods succeeded in having the debt removed from his credit report. Woods now asserts that the debt collectors' actions during this period violated his rights under the Fair Debt Collection Practices Act and the

Fair Credit Reporting Act. We have no doubt this ordeal caused Woods a world of aggravation. But the district court correctly concluded that Woods's claims cannot succeed on the merits, so we are left to affirm.

**I**

A

On March 8, 2018, someone opened an American Airlines Citibank credit card—with an account number ending in 9762—under the name Kevin Woods. Whoever did so made the card's only purchase that same day: a $377.61 one-way flight from Dallas to Los Angeles. Over the next six months the account accumulated interest and late fees, so that by the time American Airlines closed it in October, the outstanding balance was $723.55. American then sold the account to LVNV Funding, LLC, which placed it for collection with Resurgent Capital Services, L.P.

Resurgent sought to collect the debt from—who else?—Kevin Woods, the plaintiff in this case. But Woods says the debt was not his. He maintains that he had "never received a statement for the account and remained unaware of its existence" until the collectors came calling. So when the letters began arriving in January and February 2019, Woods disputed the account with Resurgent.

On February 21, 2019, Resurgent responded to these disputes with a letter stating that, after looking into Woods's claim, it had verified that the debt was his. As evidence, this letter attached an "Account Summary Report" that Resurgent had prepared, indicating that the account belonged to a Kevin Woods at Woods's current address in Tipton, Indiana.

Throughout the rest of February and March, Woods continued to call and write Resurgent to dispute the debt. On a February 28 call, Resurgent told Woods to "provide documentation and details in writing to support his dispute." Woods responded by sending Resurgent a form letter from identitytheft.gov indicating that "[a]n identity thief used [his] personal information without [his] permission to open" the account. On April 3 Resurgent sent Woods another account verification letter, identical to the one it sent in February. It also began reporting the delinquent account to the credit reporting agencies, but informed those CRAs that Woods disputed the debt.

Resurgent sent Woods two more letters on May 1, 2019. The first contained, for the first time, a copy of the disputed account's final statement. The address listed on the statement was not Woods's current address, but rather a different Tipton, Indiana address—one at which he had not lived since 2013. The second letter stated that Resurgent had found insufficient evidence to support Woods's fraud claim, but listed some documents he could provide to aid in the investigation:

1. A copy of a filed police report regarding the fraud;
2. A completed and notarized identify theft affidavit (blank copy enclosed);
3. Letter(s) from the original creditor or other previous owner of this account supporting this claim;
4. Court documents showing that the perpetrator has been prosecuted for using this account; [or]
5. Any other documents supporting this claim.

Woods did not respond to either letter. Instead, he called American Airlines. Over the phone, American confirmed that the account was opened under Woods's old address, and under an email address he says he had never heard of. Even so, American sent Woods two letters, on May 22 and June 1, indicating that it had determined the debt was his.

That was when Woods turned to the local police. On June 6 Woods filed a report with the Tipton County Sheriff's Office, alleging that he had been the victim of identity theft. Woods brought with him the two letters he had received from American. Reviewing these letters, the officer who spoke to Woods wrote in his report that American "had completed an investigation and … determined that it was in fact him."

On June 20 Woods formally disputed the debt with the CRAs and provided them a copy of the police report containing the officer's commentary. Around a week later, the CRAs forwarded these materials to Resurgent in what is known as an automated credit dispute verification, or ACDV. Resurgent reviewed these new materials and again matched Woods's name and address to the account information in its database. It verified to the CRAs that the debt was indeed Kevin Woods's.

Woods filed this lawsuit a couple months later, on August 14, 2019. The next day, Resurgent sent him another letter seeking additional documents to support his claim, and included the same list of suggested materials it had sent on May 1. Two weeks later, American wrote Woods to say that it had, at long last, concluded he was not responsible for the unpaid charge on account 9762, though it is not apparent what led the company to this changed view. Upon learning of this

development, Resurgent promptly asked the CRAs to remove the account from Woods's credit report, and they did.

B

Woods sued Resurgent and LVNV under various provisions of the Fair Debt Collection Practices Act (FDCPA), and the Fair Credit Reporting Act (FCRA). This appeal concerns two of his claims.

Woods first alleged that Resurgent and LVNV violated the FDCPA by using "false representation[s] or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). In Woods's view, Resurgent's collection letters were literally false, since they stated that he owed a debt that American Airlines had since determined was not his.

The district court granted summary judgment for the defendants on two alternative bases. First, the court determined that Woods had not met his threshold burden of showing that the one-way airline ticket was a "consumer debt" as required by the statute. In any event, the district court concluded, Woods's claim failed because "an unsophisticated consumer would not be deceived by the letters" Resurgent sent.

Next, Woods claimed that Resurgent violated FCRA by failing to conduct a reasonable investigation into his fraud claims. See 15 U.S.C. § 1681s-2(b)(1)(A). The district court credited Resurgent for "closely examin[ing]" Woods's claim "even before" the ACDV triggered its statutory obligation to do so, observing that the firm "immediately noted the dispute and asked Woods to send in records that could help resolve the matter." In the court's view, moreover, the one piece of information Woods *did* provide—the police report—"actually hurt his case" by indicating that "American Airlines had

determined he was responsible for the Account." The district court entered summary judgment for Resurgent, finding the reasonableness of its investigation "beyond question."

Woods now appeals.

## II

### A

We begin with Woods's claims under the FDCPA.

The FDCPA's protections apply only to consumer debts, which the Act defines as any obligation to pay money "arising out of a transaction" entered into "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). To make out a cause of action under the FDCPA, then, a plaintiff must offer evidence permitting a jury to conclude that the debt at issue falls within this statutory definition. See *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579–80 (7th Cir. 2019). This is so even where, as here, the FDCPA plaintiff claims he was the victim of identity theft. See *id.* at 580 (explaining that "a plaintiff proceeding under this theory still must offer evidence to establish that the debt was a consumer debt") (emphasis deleted).

In *Burton* we held that the plaintiff had not met his burden on this point. Much like this case, John Burton alleged that someone fraudulently opened a credit card in his name. See *id.* at 577. Focusing on the language in § 1962a(5), we explained that "[e]vidence of the types of purchases made on the credit card may be relevant to the question whether those purchases were made primarily for personal, family, or household purposes." *Id.* at 584. The card's transaction log, however, did not tell a coherent story one way or the other, revealing purchases at a range of vendors—from "gas stations

and convenience stores" to "office supply and auto parts stores, a local pizza establishment, and the local school district." *Id.* Many of these purchases, we reasoned, could plausibly have been made for a business purpose, even if they did not "obviously signal" such a purpose. *Id.* Faced with a toss-up, we concluded that Burton had not done enough to show that the debt fell within the FDCPA's scope. See *id.*

Because there is no way to know for sure whether the one-way flight in this case was purchased for business or consumer purposes, the district court concluded that Woods had likewise failed to meet his burden under § 1692a(5). But neither *Burton* nor the FDCPA require absolute certainty on this point. A jury need only find it more likely than not that the balance on the credit card was a consumer debt. See *Burton*, 934 F.3d at 584–85. That question is necessarily fact-intensive and highly contextual.

Here, the facts and context point in Woods's favor. In stark contrast to the long list of transactions in *Burton*, the identity theft here involved someone making just a single purchase. *Burton* teaches that "the types of purchases made on the credit card may be relevant" to the question whether they were consumer or business purchases. *Id.* at 584. And common sense tells us that business travelers do not often purchase one-way airline tickets. Under these circumstances, a reasonable jury could conclude that the odds that the purchase was made for consumer purposes were better than a coin flip.

Resurgent insists that the FDCPA required Woods to do more. In its briefing, Resurgent even goes so far as to suggest that "Woods could have subpoenaed American Airlines" to "identif[y] the person who took the flight at issue." But what then? Presumably, Resurgent seems to argue, Woods could

have tracked down the identity thief, persuaded him to sit for a deposition, and hoped he did not invoke his Fifth Amendment right not to say whether his flight was for business or pleasure.

No way. We think it implausible that Congress, in drafting a consumer protection statute like the FDCPA, would have sent consumers on such a wild goose chase. Where, as here, the nature of a disputed debt permits a reasonable inference that it was undertaken "for personal, family, or household purposes," an FDCPA plaintiff has met his burden under § 1692a(5).

So we proceed to the merits of Woods's FDCPA claim that Resurgent used "false representation[s] or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Woods's contention relies on hindsight: because American Airlines now says he does not owe the $723.55 balance on the credit card, Resurgent's letters indicating that he did owe that amount were literally "false" means of attempting to collect that debt.

But literal falsity is not the standard under § 1692e. We have instead explained that "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009). Put another way, under § 1692e, a statement "isn't 'false' unless it would confuse the unsophisticated consumer." *Id.*

On appeal, Woods fails to grapple with the applicable statutory standard. He urges that the FDCPA requires "strict liability" for any and all false statements. But we rejected this exact argument in *Wahl*, see *id.* at 645, and we do so again

today. The FDCPA does impose strict liability in the sense that "a collector need not be deliberate, reckless, or even negligent to trigger liability"—but "the state of mind of the reasonable debtor is *always* relevant." *Id.* at 646 (cleaned up) (emphasis in original).

Woods has not explained why Resurgent's letters seeking to collect the American Airlines debt were false as that term is defined in our cases, as distinct from false in a literal sense. The unsophisticated consumer possesses "a reasonable knowledge of [his] account's history," *id.* at 646, and so would have known that, contrary to the assertions in Resurgent's letters, he had never opened a Citibank account ending in 9762 and bought a flight on American Airlines. Armed with this knowledge, the unsophisticated consumer would have known the letters were sent in error—just as Woods did here. The fact that American Airlines later confirmed Woods's intuition that the debt was not his does not render Resurgent's letters actionable. Instead, because the statements in those letters were not ones that would "influence a consumer's decision … to pay a debt," *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009), they were not "false" within the meaning of § 1692e(10). We therefore affirm the district court's entry of summary judgment for Resurgent and LVNV.

B

We turn now to Woods's claims under FCRA. Resurgent's receipt of the ACDV triggered a statutory obligation to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). That investigation, we have held, must be "reasonable"—pro forma inquiries will not do. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827

(7th Cir. 2005). And the reasonableness of a furnisher's investigation "is a factual question normally reserved for trial" unless the defendant's procedures were reasonable "beyond question." *Id.*

What counts as a reasonable investigation depends on the content of the ACDV the furnisher receives. In *Westra*, the report contained only "scant information regarding the nature of [the] dispute": a claim that the account "did not belong" to the plaintiff. *Id.* In these circumstances, we held the furnisher's limited investigation, in which it "verified [the plaintiff's] name, address, and date of birth," to be reasonable beyond question. *Id.* But we left open the possibility that, had the ACDV indicated that the dispute concerned fraud or identity theft, "a more thorough investigation" may have been required. *Id.*; see also *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) ("The pertinent question is … whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.") (citing *Westra*, 409 F.3d at 827).

Woods says a more thorough investigation was required here. The June 6 police report attached to the ACDV described Woods's claim that "someone had obtained a credit card [in] his name and had made charges." Given this added detail, Woods contends, Resurgent's investigation, which consisted primarily of matching his name and address to the information in its files, could not have been reasonable as a matter of law. Of course his name would match, Woods says, as that is the very essence of identity theft.

If that were all the information the ACDV contained, Woods might be right. But remember that the ACDV also had

attached to it the officer's commentary on the police report indicating that American Airlines had sent Woods two letters "stating that they had completed an investigation and they determined that it was in fact him" who made the purchase. Far from helping Woods's case, this information seemed to indicate that there was in fact no fraud—no identity theft— and Resurgent was well within its rights to rely on this representation to some degree.

Given that the ACDV made it seem that the vendor had already resolved Woods's fraud claim against him, Resurgent's next move was similarly reasonable. On August 15, 2019, Resurgent sent Woods the same letter it had sent him on May 1, once again inviting him to provide additional documentation to help make his case and attaching a blank identity theft affidavit for him to complete. And yet again Woods responded to this letter with silence, even though he had long known about the out-of-date home address and the bogus email address used to open the account—information that could have done much to clear things up.

Under these circumstances, we cannot say that Resurgent's investigation was unreasonable. But a word to the wise: this opinion is no license for furnishers to offload their § 1681s-2(b)(1)(A) investigation obligations to consumers by spamming them with requests for additional information. Instead, like all questions of reasonableness, our conclusions depend on the totality of the circumstances in the case before us.

\*     \*     \*

For these reasons, the district court's judgment is AFFIRMED.